AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐ D

CLERK'S OFFICE
A TRUE COPY
Nov 23, 2021
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. 21-M-532 (SCD) |
| *or identify the person by name and address)* | ) | |
| Information associated with several Facebook | ) | **Matter No. 2021R00258** |
| User ID Nos. identified in Attachment A | ) | |
| | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. Over which the Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     12-7-21     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Stephen C. Dries     .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for   30   days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____     .

Date and time issued:     11-23-21. 12:30 pm

City and state:     Milwaukee, Wis

*Judge's signature*

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## GRAND JURY MATTER NO

## Property to Be Searched

This warrant is being sought for the data specified in Attachment B associated with the Facebook User ID Nos. below, that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, CA:

- 100017383278065 (Derek Smith)

- 100014361305177 (Javaier Thompson)

- 100053823345496 (Gerrell Bufford)

- 100033830475871 (James Gaines)

- 100021565664177 (William Libby III)

- 100000705176075 (William Libby III)

- 1266361104 (Lawrence Turner)

21

**GRAND JURY MATTER NO**

**Particular Things to be Seized**

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the User Id Nos. listed in Attachment A:

(a)     All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from June 1, 2021, to the present;

(c)     All "Stories" posted by the account from June 1, 2021, to the present;

(d)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from June 1, 2021, to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(e)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

22

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(g) All other records and contents of communications and messages made or received by the account from June 1, 2021, to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(h) All "check ins" and other location information;

(i) All IP logs, including all records of the IP addresses that logged into the account;

(j) All physical location data for the account, including any data collected from electronic devices associated with the account, from June 1, 2021 to the present;

(k) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(l) All information about the Facebook pages that the account is or was a "fan" of;

(m) All past and present lists of friends created by the account;

(n) All records of Facebook searches performed by the account from June1, 2021, to the present;

(o) All information about the user's access and use of Facebook Marketplace;

23

(p)     The types of service utilized by the user;

(q)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(r)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(s)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 30 days of issuance of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 844(i), 18 U.S.C. § 844(d), 18 U.S.C. § 842(a)(1), and 26 U.S.C. § 5861(d) (collectively, the "Subject Offenses"), including information pertaining to the following matters:

(a) Evidence of the Subject Offenses;

(b) Preparatory steps taken in furtherance of the Subject Offenses;

(c) Evidence of the existence, scope, or overt acts in furtherance of a conspiracy to commit the Subject Offenses;

(d) Evidence of motive, intent, or knowledge of the Subject Offenses;

(e) Evidence of the location, whereabouts, and patterns of travel of the user of the particular account;

24

(f) Appearance, clothing, and identity of the user of the particular account;

(g) Evidence indicating how and when the particular account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(h) Evidence indicating the particular account owner's state of mind as it relates to the Subject Offenses;

(i) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(j) Evidence indicating that any person attempting to obstruct or impede investigations related to the Subject Offenses.

25



CLERK'S OFFICE
A TRUE COPY
Nov 23, 2021
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with several Facebook<br>User ID Nos. identified in Attachment A | )<br>)<br>)<br>)<br>)<br>) | Case No. **21-M-532 (SCD)**<br>**Matter No.: 2021R00258** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A. Over which the Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C., Section 842(a)(1); Title 26, U.S.C., Section 5861 | manufacturing and dealing explosives without a license; possession or making a destructive device without appropriate registration |

The application is based on these facts:

See the attached affidavit.

☐ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JODY KEEKU

Digitally signed by JODY KEEKU
Date: 2021.11.23 11:50:28 -06'00'

*Applicant's signature*

ATF TFO Jody Keeku

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means)*.

Date: __11-23-21__

*Judge's signature*

City and state: *Milwaukee, Wis*

Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**GRAND JURY MATTER NO 2021R00258**

I, Jody Keeku, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant for information associated with certain Facebook User ID Nos. that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A, for evidence, more fully described in Attachment B. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the Facebook User ID Nos. identified below.

- 100017383278065 (Derek Smith)

- 100014361305177 (Javaier Thompson)

- 100053823345496 (Gerrell Bufford)

- 100033830475871 (James Gaines)

- 100021565664177 (William Libby III)

- 100000705176075 (also William Libby III)

- 1266361104 (Lawrence Turner)

2

2.      I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since July 2001. My duties as a Special Agent with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center (Glynco, Georgia), as well as the ATF National Academy. That training included various legal courses related to Constitutional Law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence collection.

4.      In addition to my duties as a criminal investigator, I am also an ATF Certified Explosive Specialist Bomb Technician (CESBT). As a CESBT I conduct investigations in the Chicago Field Division and other ATF Jurisdictions as assigned, provide technical assistance to state/local bomb squads and other ATF agents in the investigation of explosions; provide safe disposal of recovered, purchased, seized or forfeited explosive materials; and provide explosive diagnostic capabilities at special events. I have participated in the scene examination and post-blast investigation of over ten explosive related activities. I have coordinated, instructed and participated in over ten live explosive training scenarios for post blast investigation training. I have also participated as an assistant instructor at the Advanced Explosive Disposal Techniques course, and I have conducted or participated in several explosive disposal operations. As a Bomb Technician, I am responsible for conducting investigations, render safe, disassembly, and/or disposal of suspected hazardous device(s), explosives, explosive materials, pyrotechnics and ammunition. Responsibilities also include

3

coordination with other local, state, and federal partners to investigate, perform diagnostics and potential render safe operations in chemical, biological, radiological, nuclear, and explosive (CBRNE) events. I conduct bombing crime scene investigations, collect and preserve evidence, and prepare and provide courtroom testimony. I maintain issued bomb squad equipment, provide technical support to special operations, and provide dignitary protection. I have prepared and participated in explosive related training, and am familiar with technical and intelligence publications, the federal explosives laws and regulations and other explosive related materials. I maintain professional training and liaison with other public safety bomb squads, explosive detection canine units, special weapons and tactics (SWAT) units, military EOD units, federal agencies and professional associations such as IABTI and IAAI. I report investigative and technical data on explosives related incidents and activities to the Bomb and Arson Tracking System (BATS).

5. Through my experience and training as a firearm, arson, and explosives investigator, I am aware that social media sites, such as Facebook, can be used to store and save audio, video, and text files that can link to a variety of criminal activity. I am also aware that social media sites, such as Facebook, are often used by witnesses to record criminal activity.

6. I have previously applied for and received search and arrest warrants related to the crime of arson and explosive, as well as other crimes.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.      Based on my training and experience and the facts, as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 844(i), 18 U.S.C. § 844(d), 18 U.S.C. § 842(a)(1), and 26 U.S.C. § 5861(d) (collectively, the "Subject Offenses") have been committed by Derek Smith, Javaier Dwayne Thompson, Gerrell Bufford, James Gaines, William Libby III, and Lawrence Turner. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

9.      At 12:20 AM on 07/05/2021, the occupants of a silver 2007 Ford 500 four-door threw an Improvised Explosive Device (IED) at two Milwaukee Police Officers. The officers were in full uniform and were standing next to their marked Milwaukee Police Department squad car at 1213 N. Water St, in the City and County of Milwaukee. This device exploded, causing the airbags of the squad car to deploy and the two officers to become disoriented. The two officers were transported to the hospital and were treated for concussion-like symptoms. Both officers are still experiencing serious medical issues related to this attack; neither has been able to return to work.

10.     The Milwaukee Police Department conducted an open-source search and located a public post on www.Facebook.com, regarding the explosives-related injuries suffered by the two MPD Officers. A public comment was created under this post by a subject with the profile name of "Derek Smith". This profile "tagged" or referenced the names of two other profiles; "Javier Thompson" and "Gerrell Bufford", followed by a laughing emoji.

11.     Other Milwaukee Police Officers working in the area obtained the license plate from the sedan the IED was thrown from. The Wisconsin license plate, 14125GT, listed

2

to Derek M. Smith, B/M 03/15/2002. Smith was eventually arrested and confessed to throwing various IED's out of his car on Water Street the evening of July 4, 2021, along with two friends. Smith identified his co-actors as Javier D. Thompson, B/M 05/15/2002, and Gerrell NMN Bufford, B/M, 02/10/2001.

12. Smith gave law enforcement consent to look through his cell phone. On Smith's phone, law enforcement observed a video of a subject holding, lighting, and throwing a white PVC Pipe Bomb near the street at 2414 W. Fond du Lac Ave. on the night of July 4, 2021. This pipe bomb exploded near the street.

13. Smith stated he didn't know who this subject from the video was, specifically, but claimed the subject was related to Bufford. This subject was a black male, 20's with a thin build, slight moustache and chin hair, with tattoos on his arms. This subject was wearing a white tank top, with New York and the number 30 written on the chest.

14. On July 6, 2021 Milwaukee Police Officers went to the address of 2473 W. Walnut St, located in the City and County of Milwaukee. At this residence, Bufford was arrested. Also at this residence was Lawrence T. Turner, B/M, 02/08/1994, who was the half-brother of Bufford. Turner was the subject in the video lighting and throwing the pipe bomb at 2414 W. Fond du Lac Ave.

15. Bufford confessed he was driving around with Smith and Thompson on the morning of July 5, 2021, and acknowledged they were throwing fireworks out of the car.

16. Turner was arrested and confessed to possessing and lighting the pipe bomb from the video on Smith's phone. Turner stated he bought the pipe bomb from an individual who he could call and have deliver more. Turner provided the cell phone number of 414-252-8898 for the subject he called to purchase the pipe bomb from and said the suspect drove

3

a beat-up white pickup truck.

17.     On the evening of July 6, 2021, Turner called 414-252-8898 and requested to buy two pipe bombs. Turner arranged to meet the pipe bomb dealer in Washington Park at 1857 N. 40th St.

18.     At approximately 9:50 PM that evening, the suspect pulled into Washington Park in an older model white pickup truck. This subject was taken into custody and identified as Demetrius A. Powell (B/M, 02/16/1966).

19.     Located on the passenger side floorboard, in plain view, was a pipe bomb made of PVC, four M-1000's and ninety M-80's. All of these items were X-rayed and contained powder inside of them.

20.     Powell stated he had been buying fireworks and explosives from an individual that goes by "Bill", whose phone number is 414-899-0231. The phone number listed back to William Libby III (W/M, DOB 09/22/1976) ("LIBBY III"). Powell also identified LIBBY III as "Bill" using a photo lineup.

21.     A consensual search of Powell's phone revealed text messages between Powell and LIBBY III regarding the manufacture and sale of explosives. A sample of these messages follows; these messages may have been modified slightly for clarity:

- Friday, June 18, 2021:
  - LIBBY III at 10:51 AM CST: "The address is 7100 38th Ct. with the handicap ramp"

  - LIBBY III at 4:47 PM CST: "My powder came today and I made three 6 pounders and one 7 pounder the 6 pounders are $175 and the 7 pounder is $200"

4

- Saturday, June 26th, 2021:

  - LIBBY III at 9:50 AM CST: "Did you still want the go cart and those big fireworks because I have some people that are interested in them but I'm giving you first grab at them"

  - LIBBY III at 2:23 PM CST: "Are you coming today"

- Friday, July 2, 2021:

  - LIBBY III at 9:16 AM CST: "I am off work today call me"

- Saturday, July 4, 2021:

  - LIBBY III at 5:00 PM CST: "Just so you know I have lots of fireworks left"

  - Powell at 6:19 PM CST: "Ok"

  - LIBBY III at 9:56 PM CST: "I'm here"

  - LIBBY III at 10:22 PM CST: "The add is 5133 N 38th st"

22.　Powell stated that he purchased explosives from LIBBY III near the area of 38th and Lancaster/Villard on a dead-end street. He also described purchasing explosives at a nearby home, located at 5133 N 38th St.

23.　Powell stated he doesn't make these devices; he just sells them as a middle man to make money. Powell stated: "Fireworks is just like drugs you know what I'm saying. Middleman selling them, I made a few dollars off the motherfuckers." Powell confirmed he was going to sell the explosives in his possession to the guy who set him up. Powell stated the "M-80's" are $10, the "sticks" are $30 and the "two pounder" is $50.

24.　A search warrant was executed at Powell's residence located at 4657 N. 36th

5

St, Apt. 1 Milwaukee, WI. Located at the residence was a clear plastic zip lock bag that contained several improvised explosive devices commonly referred to as M-80's. This bag of M-80's was photographed and recovered. An X-ray of these devices was taken and showed they contained an unknown type of powder.

25. On July 7, 2021, a search warrant was executed at 5133 N 38th St. Milwaukee, WI, the residence that Powell met LIBBY III at to purchase the explosives. The residence belongs to LIBBY III's brother John J. Libby (W/M, DOB 9/18/1979), along with his girlfriend Sarah Cupertino (W/F, DOB 01/04/1992). Items located at the residence were 47 improvised explosive devices commonly referred to as M-80's. These devices were inside a "Great Value" brand plastic zip lock bag. This bag was labeled "M80" and with the number "100". The M-80's seized from the search warrant at 5133 N. 38th St. were similar to the M-80's seized from a vehicle driven by Powell on July 6, 2021. They were also similar to the bag of M-80's recovered from inside Powell's apartment at 4657 N. 36th St. #1.

26. During the search warrant John Libby was interviewed by law enforcement and stated that his brother LIBBY III brought over bags of "M-80" type devices to John Libby's residence. LIBBY III told John Libby that he generated a post on Facebook that he was selling his "Fun Sticks," which John Libby knew to be fireworks and M-80's.

27. On July 8, 2021, a search warrant was executed at the residence of LIBBY III, 6216 W. Boehlke Ave. Milwaukee, WI. An individual later identified as James Gaines (B/M, DOB 8/13/1978) was present at the residence. Gaines stated he was at the residence picking up some of his belongings. Items found at the residence were latex gloves, glue gun, LIBBY III's driver's license, and a white piece of paper with a note identifying an email of loudbang187@gmail.com, with a password of "Firework123" handwritten on it. Officers

6

also found a cardboard box with a shipping label from CannonFuse LLC, containing a packing slip from a company using the URL "CannonFuse.com". This packing slip listed the following items were shipped to LIBBY III at 6216 W. Boehlke Ave. and are used in the manufacture of "M" type devices: Cannon Fuse (quantity of 4), Tube, 9/16" x 1.5" x 1/16" (500 pcs), Red Plastic Plugs, 9/16" (1000 pcs), Hot Glue Sticks Tube, 1" x 2.5" x 3/32" (quantity of 4), Red Plastic Plugs, 1" (quantity of 5) Tube, 1" x 6" x 3/8" (quantity of 5).

28. On Tuesday, July 13, 2021, LIBBY III was arrested at S84W18759 Enterprise Dr. in the City of Muskego, WI, the location of a business called Specialty Machine Products. LIBBY III was employed by this business.

29. Nicholas Zmudzinski is the owner of Specialty Machine Products. Zmudzinski stated that LIBBY III had worked for him off and on for the past ten years. LIBBY III's father -- William Libby, Jr. (M/W, 03/31/54) ("LIBBY JR") -- also worked for him part time. Zmudzinski was aware why LIBBY III was arrested and explained that last year LIBBY III gave him what was referred to as a "1/4 stick," described as being approximately 3/4" x 2" in size with a fuse. Zmudzinski said after he lit the fuse, there was a loud explosion when the "1/4 stick" blew up. Zmudzinski stated LIBBY JR. also told him he was selling the "1/4 sticks"; however, Zmudzinski did not buy any of them from LIBBY JR.

30. A query of ATF Explosive Licensing Database revealed that neither LIBBY JR. nor LIBBY III have a license to possess, manufacture, or sell explosives nor have they ever applied for one.

31. Law enforcement received records from CannonFuse LLC regarding its dealings with LIBBY JR. and LIBBY III, pursuant to lawful legal process. According to those records, LIBBY III made purchases from CannonFuse LLC dating back to July 30,

7

2018 with the most recent purchase on June 26, 2021.

32.     LIBBY III used his current home address of 6216 West Boehlke Avenue in the City of Milwaukee as the shipping address on all of his orders, which was where the state residential search warrant was executed and was still the current address of Libby in July of 2021.

33.     LIBBY III used the email address of williamlibbyiii@yahoo.com on all of his orders with CannonFuse LLC.

34.     LIBBY JR. had purchases dating back to July 5, 2018, with his most recent purchase coming June 27, 2021. LIBBY JR used his current home address of 7100 N 38th Court in the City of Milwaukee as the shipping address on his orders.

35.     LIBBY JR. used the email address of shellylibby1@yahoo.com for his orders. LIBBY JR's name was on all of his invoices with this email address.

36.     Both LIBBY JR. and LIBBY III purchased large quantities of items known by law enforcement to be used in the manufacture of improvised explosive devices from CannonFuse LLC, including fuse, tubes, plugs, hot glue, and a hot glue gun.

37.     Through the consensual download of Smith's cell phone [(414) 801-4396], text messages were located between him, Bufford, and Thompson on the day of the incident-July 4, 2021.

38.     All messages between Smith, Thompson and Bufford were within a group chat with the following numbers: Smith (414) 801-4396; Thompson (414) 698-2008; and Bufford (414) 467-4687.

39.     On July 4, 2021, the following messages (which have been edited slightly for clarity) were sent amongst the group chat between the three.

8

40. At 1:36 PM UTC (8:36 AM CST), Smith messaged the group chat: "Y'all wanna all out 50 n on fireworks?" Burfford responded, "I can do $25 don't get paid till Friday". Smith replied, "Let's do it" and Thompson responded, "Ok bet".

41. At 1:52 PM UTC (8:52 AM CST), Smith sent a photo of a screenshot of a Facebook post from 'Tony Hefner' of a firework stand with the statement "Come shop this shit CHEEEEEEEAP!!! 4635 N Hopkins St…off Hampton ave" with a firework emoji. Bufford responded, "Bet" and Smith responded, "Hopefully they still open when I get off". Bufford asked what time he got off and Smith told him '6' and Thompson replied, "damm damm".

42. At 4:38 PM UTC (09:38 AM CST), Smith messaged the group chat, "Lets go find some BBB fire crackers". Bufford asked, "Some what" and Smith stated, "Fireworks negro" and Bufford replied, "Aww yes". Smith responded, "Lemme get dress rq [right quick]."

43. At 5:07 PM UTC (10:07 AM CST), Smith messaged the group chat, "I want some of own no cap but we can go to both". Bufford replied, "Yeah I'm saying we get some too but go down there and pop them". Smith stated, "That pop em with se mujeres. some. Bet call em see where he at we gotta find some cheap ones". Bufford stated, "His shit went straight to voicemail". Smith responded, "Damm ask on IG [Instagram] or fb [Facebook] who selling em".

44. Later that evening, at 9:16 PM UTC (4:16 PM CST), the user of the Facebook profile 'Khalehia Marie," user ID 100009207811364, messaged Smith, "Y'all got fireworks?"

9

*Facebook Evidence- "Derek Smith"*

45. Law enforcement conducted an open-source search and located a public post on www.Facebook.com, regarding the explosives related injuries suffered by the two MPD Officers. A public comment was created under this post by a subject with the profile name of "Derek Smith". The profile "tagged" or referenced the names of two other profiles; "Javier Thompson" and "Gerrell Bufford", followed with laughing emoji. Law enforcement observed several conversations between Smith, Bufford, and Thompson utilizing Facebook. Using databases to be reliable in the past, law enforcement confirmed that the Facebook ID number associated with the "Derek Smith" Facebook profile is "100017383278065". Through a consensual download of Smith's cell phone (414)-801-4396, text messages were located between Smith, Bufford, and Thompson on the day of the incident July 4, 2021. Smith and Thompson's Facebook information was located within Smith's cellphone listed under Smith's address book. Based on my review of known photos of Smith and photos that are publicly available of the user of 100017383278065, I believe that Smith is the user of 100017383278065.

*Facebook Evidence- "Javaier Thompson"*

46. Law enforcement conducted an open-source search and located a public post on www.Facebook.com, regarding the explosives related injuries suffered by the two MPD Officers. A public comment was created under this post by a subject with the profile name of "Derek Smith". The profile "tagged" or referenced the names of two other profiles; "Javier Thompson" and "Gerrell Bufford", followed with laughing emoji. Law enforcement observed several conversations between Smith, Bufford, and Thompson utilizing Facebook. Using databases to be reliable in the past, law enforcement confirmed that the Facebook ID

10

number associated with the "Javier Thompson" Facebook profile is "100014361305177". Through a consensual download of Smith's cell phone (414)-801-4396, text messages were located between Smith, Bufford, and Thompson on the day of the incident July 4, 2021. Smith and Thompson's Facebook information was located within Smith's cellphone listed under Smith's address book. Based on my review of known photos of Thompson and photos that are publicly available of the user of 100014361305177, I believe that Thompson is the user of 100014361305177.

*Facebook Evidence "Gerrell Bufford"*

47.     Law enforcement conducted an open-source search and located a public post on www.Facebook.com, regarding the explosives related injuries suffered by the two MPD Officers. A public comment was created under this post by a subject with the profile name of "Derek Smith". The profile "tagged" or referenced the names of two other profiles; "Javier Thompson" and "Gerrell Bufford", followed with laughing emoji. Law enforcement observed several conversations between Smith, Bufford, and Thompson utilizing Facebook. Using databases to be reliable in the past, law enforcement confirmed that the Facebook ID number associated with the "Gerrell Bufford" Facebook profile is "100053823345496". Based on my review of known photos of Bufford and photos that are publicly available of the user of 100053823345496, I believe that Bufford is the user of 100053823345496.

*Facebook Evidence "James Gaines"*

48.     Based on my review of known photos of Gaines and photos that are publicly available of the user of 100033830475871, I believe that Gaines is the user of 100033830475871.  Gaines is also listed as a "friend" on LIBBY III's Facebook account; told law enforcement that he resides with LIBBY III on and off; and has been taking care of

11

his residence while Libby III was on vacation. Given the information described above, I also believe Gaines is associated with the unlicensed manufacture and dealing of M 80 explosive devices along with LIBBY III. Gaines resided with Libby III on and off for several years and was seen at LIBBY III's residence removing articles from LIBBY III's residence around the time of the search warrant. I also know, based on my training and experience, that Facebook maintains, with each respective account, various forms of useful data, including but not limited to location data and associated phone numbers. Information of this sort (including confirmation of Gaines's phone number and location data associated with Gaines on the day of the search warrant at LIBBY's III's residence) would tend to establish whether Gaines was involved in the unlicensed manufacture and dealing of explosive devices. I accordingly believe that information associated with 100033830475871 will contain evidence of unlicensed manufacture and dealing of explosive devices.

*Facebook Evidence William Libby III*

49.     Based on my review of known photos of LIBBY III and photos that are publicly available of the user of 100021565664177 and 100000705176075, I believe that LIBBY III is the user of 100021565664177 and 100000705176075.  Given the information described above, I also believe LIBBY III was manufacturing and dealing explosive devices without a license. I also know, based on my training and experience, that Facebook maintains, with each respective account, various forms of useful data, including but not limited to location data and associated phone numbers. Information of this sort (including confirmation of LIBBY III's phone number and location data associated with LIBBY III on the days he was manufacturing and dealing explosives without a license). LIBBY III's brother, John Libby, also told law enforcement that libby III had generated a post on Facebook that he was

12

selling his "Fun Sticks", known to John Libby as fireworks and M80's. I accordingly believe that information associated with 100021565664177 and 100000705176075 will contain evidence of unlicensed manufacture and dealing explosives without a license.

*Facebook Evidence "Lawrence Turner"*

50.     Based on my review of known photos of Turner and photos that are publicly available of the user of 1266361104, I believe that Turner is the user of 1266361104. Given the information described above, I also believe Turner was in possession of a pipe bomb and M 80 explosive devices sold to him by Powell that were previously purchased from LIBBY III. I also know, based on my training and experience, that Facebook maintains, with each respective account, various forms of useful data, including but not limited to location data and associated phone numbers. Information of this sort (including confirmation of Turner's phone number and location data associated with Turner) would tend to establish whether Turner was in possession of the pipe bomb and explosive devices. I accordingly believe that information associated with 1266361104 will contain evidence of the illegal possession of a pipe bomb and explosive devices.

**FACEBOOK FUNCTIONALITY**

51.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

52.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This

13

information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

53. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

54. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Depending on the user's privacy settings, Facebook may also obtain and store the physical location of the user's device or devices as they interact with the Facebook service on those devices.

55. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

56. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

57. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through

15

Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

58. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

59. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

60. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

61. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

62. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

63. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the

16

user's access or use of that application may appear on the user's profile page.

64. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile and would show when and from what IP address the user did so. Based on my training and experience, I know that Facebook can provide real-time and historical location information for the device or devices using a Facebook account, including the date and time associated with a latitude and longitude.

65. Facebook further maintains a functionality it refers to as "Stories," whereby users can post photos and videos using Facebook's "in app" camera, frequently utilizing filters and additional text. After a user "posts" a "Story," the "Story" will be available to their "friends" for a 24-hour period, appearing at the top of their "News Feed" in the application.

66. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support

17

services, as well as records of any actions taken by the provider or user as a result of the communications.

67. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last,

18

Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

68. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

69. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

70. Based on the facts set forth in this Affidavit, I submit that there is probable cause to believe that information associated with the Facebook User ID Nos. described in Attachment A contains evidence of the Subject Offenses, as described in Attachment B.

71. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this

19

warrant by serving the warrant on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

## GRAND JURY MATTER NO

### Property to Be Searched

This warrant is being sought for the data specified in Attachment B associated with the Facebook User ID Nos. below, that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, CA:

- 100017383278065 (Derek Smith)

- 100014361305177 (Javaier Thompson)

- 100053823345496 (Gerrell Bufford)

- 100033830475871 (James Gaines)

- 100021565664177 (William Libby III)

- 100000705176075 (William Libby III)

- 1266361104 (Lawrence Turner)

21

## ATTACHMENT B

## GRAND JURY MATTER NO

### Particular Things to be Seized

I.      **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the User Id Nos. listed in Attachment A:

(a)     All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from June 1, 2021, to the present;

(c)     All "Stories" posted by the account from June 1, 2021, to the present;

(d)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from June 1, 2021, to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(e)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

22

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(g) All other records and contents of communications and messages made or received by the account from June 1, 2021, to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(h) All "check ins" and other location information;

(i) All IP logs, including all records of the IP addresses that logged into the account;

(j) All physical location data for the account, including any data collected from electronic devices associated with the account, from June 1, 2021 to the present;

(k) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(l) All information about the Facebook pages that the account is or was a "fan" of;

(m) All past and present lists of friends created by the account;

(n) All records of Facebook searches performed by the account from June1, 2021, to the present;

(o) All information about the user's access and use of Facebook Marketplace;

23

(p) The types of service utilized by the user;

(q) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(r) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(s) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 30 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 844(i), 18 U.S.C. § 844(d), 18 U.S.C. § 842(a)(1), and 26 U.S.C. § 5861(d) (collectively, the "Subject Offenses"), including information pertaining to the following matters:

(a) Evidence of the Subject Offenses;

(b) Preparatory steps taken in furtherance of the Subject Offenses;

(c) Evidence of the existence, scope, or overt acts in furtherance of a conspiracy to commit the Subject Offenses;

(d) Evidence of motive, intent, or knowledge of the Subject Offenses;

(e) Evidence of the location, whereabouts, and patterns of travel of the user of the particular account;

24

(f) Appearance, clothing, and identity of the user of the particular account;

(g) Evidence indicating how and when the particular account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(h) Evidence indicating the particular account owner's state of mind as it relates to the Subject Offenses;

(i) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(j) Evidence indicating that any person attempting to obstruct or impede investigations related to the Subject Offenses.

25